The next case is 419-0573, Marriage of Coleman, for the appellant is Thomas Parker, are you ready sir? Yes. And for the appellee is Sarah Boulin? Yes. Is that pronounced correctly? Yes.  May it please the court. Counsel, this action was brought by the appellant to modify his child support due to a change in circumstances, and the issue is whether the trial court in Livingston County, as a matter of law and fact, in denying the petition to modify was an abuse of discretion and contrary to the manifest voice of the evidence. The facts, briefly, the appellant had both a civil engineering degree and a law school degree, a Juris Doctorate degree. He practiced his civil engineering degree in Chicago for ten years, and he always had an interest in getting back to utilizing the law degree. And he had embarked on a search for ten years of basically trying to find the right shoe that fit his needs, and he never did find that. I represented him on his dissolution of marriage and all the motions thereafter, and getting up in years, I approached him and I says, would you be interested in purchasing our firm? Now at the time he was looking at a possible job with a Texas law firm, wasn't he? He was all over the place, but he never got to the point of getting down to salary negotiations or anything else. And so I approached him, and we talked, we met with the CPA, and they hammered out a deal. Were the CPA's calculations ever reduced to writing? The calculations were reduced to writing. We have a signed agreement. Were those ever produced? No. That was never requested by opposing counsel. Counsel, I'm sorry. I wanted to make sure we have the facts right. So your client had an engineering degree, was working in that field, and then went to law school after that, is that correct? That's correct. He went to law school at night at Loyola. Okay. And he always wanted to pursue his law degree more so than his engineering degree, and there were certain things going on with the engineering firm that he was working for that made him a little nervous, and so we worked out a deal for him to come down to central Illinois where he was born and raised, went to high school, went to college at Illinois Wesleyan, played football, had friends down there. And so we thought it was a good fit for him, and he thought it was a good fit for him, for us, we thought it was a good fit for us. And he wanted to utilize, for lack of better terms, when you're going through law school you always say, or professors always tell you, hang on or buy a business from a retiring attorney so let him show you the ropes and stuff like that. So it was kind of that situation. And we worked out a deal, and we believe the change in his profession from engineering to law school or law practice was a good faith change because he was always current on his child support. He had been that for 10 years. He had 50% of the extracurriculars on the children. He has two children that he always paid for, and 75% of the medical expenses he always paid for. Well, counsel, ultimately that's the question that's being asked, whether or not it was appropriate for the trial court to find that this was not done in good faith. Do you agree with that? That's the ultimate question, really. The trial court found that it wasn't in good faith, and you're saying that it was, correct? Yes, yes. And so what is our standard of review in this matter? The standard of review is whether or not a substantial change was made in good faith. It's a question of fact by the trial court, I believe. And as far as modifying support, we look to whether or not the trial court abused its discretion in the decision, right? That's correct. It's a two-step process. Right. And so, I mean, you know, the other side talks about the fact that there was a significant drop in his pay. This change is going to, he will own the firm after 10 years, by which that time his child support obligation will be over, and that there was no indication that it was impending that he was going to be fired from the current position that he had at the engineering firm where he was doing engineering and legal work. And so with those things on the other side, how are we to find that it was an abuse of discretion? Well, I think the record indicates that the engineering firm had situations going on. They were under water from the last couple of years. They didn't make their, I think it was $250,000. They didn't make their yearly amount that they thought they were going to. He had not been told he was going to be laid off. He was not being told he was going to be laid off. Duval Hamilton had not indicated that they were announcing any layoffs. No. That's correct. But... And in your search for a law firm, you've never searched the Livingston County? Not to my knowledge, no. The only, probably, the only law firm he probably knew was us as far as, and the opponent when they did the modification of the child support or whatever. Were you looking at two firms in the county? No. Okay. So if he was interested in coming back home, there was other firms that he could have reached out to? There was other firms he could have reached out to. I'm not sure. I can only supposition on my part. But I'm not sure he could have bought into a practice and owned that practice like he did with us. Yeah, let's talk about that. He was making upwards of $111,000. He was anticipating a raise in 2019, right? That's correct. Your deal with him is, you're going to pay him a flat $65,000. No commissions, no overtime, no bonuses. It's not based on billable hours. There's no percentage of new business brought in. The only other caveat is that if a case grosses more than $40,000 in fees, you guys will decide what part of that he might get. That's correct. Okay. So you're paying him $650,000 over a 10-year term. In return, he's going to pay you $175,000 for the practice. With 4 percentages, which comes to a total of $212,640. There's no incentive to bring in business. There's no base that he has to produce against which his salary is going to be drawn. I think the incentive is going to be on him because he's buying the business. He's buying the equity as a partner. He's taking an almost 50 percent cut in pay, which also just happens to correspond with the 10 years that he's got left for paying child support. There's no incentive whatsoever for him to earn anything more than $65,000 a year because he doesn't get credit for anything above his salary. If he brings in business and the firm flourishes with another person or partner with the firm, that's to his advantage, I think. Was there a provision for that? Pardon? Was there a provision for that? No, it's just very similar to when you buy into a large firm in Chicago and you become an equity partner. Generally, they set a set base salary. The difference here is he's not an equity partner. He's not a partner at all. No, he isn't. He doesn't get any interest in the business after 10 years. After 10 years, the business is his. Right. It is his. Up until 10 years, he has zero interest in the business, right? Financially or otherwise. He's salaried at more than $65,000. That's correct. He gets no percentage of stock that increases each year with the years that he's there, right? That's right. Okay, so he goes from zero to 100% at the end of 10 years, right? That's right. Okay. But if the firm flourishes within five years or whatever and he can pay it all off, it's all his. So it doesn't have to be 10 years, okay? That's just we set it up with a CPA, okay? And so we think there is a good faith effort because he's not trying to evade, like you normally see, people quit their jobs or something like that so they don't have to pay child support. He's not evading child support. He's still making a reasonable salary, okay? It's not like he was making, but he's still making a reasonable salary for a child. To what extent is it appropriate for your client and for the court to evaluate the obligations he has to support his children with child support order when he decides whether or not to make a move like this, drastically reducing his income? Well, I don't think he has to consult with the wife, which to... I didn't ask you that question. Okay, I'm sorry. I didn't ask you whom he has to consult with. Okay. My question is to what extent is it appropriate for him and for the trial court to consider his child support obligation when he decides to take a job that results in a dramatic reduction in his income? Well, I only can refer to Kuhn's case and a couple of others where there was a reduction in salary. I mean, just generally speaking, I don't want reference to other cases. Okay. Someone in your client's position who has a child support obligation to whose credit he's been meeting, to what extent must he consider this obligation when he decides for seemingly legitimate reasons to take on some other employment that is going to drastically reduce his income, with the effect that, as you are now here arguing already to the trial court, he can't be expected any longer to make the child support payments he did in the past? That's correct. Is this something that should counsel caution and maybe say, yeah, I'd like to do this, but if I didn't have any child support obligations, I think it would be a fine idea, but because I do, I shouldn't make this decision? I looked at the case law, and the case law says the non-custodial parent should not be penalized if they want to make this change. If they're not trying to, and they're a good faith change, and they're not trying to evade their obligation, which he's not trying to do. He's always been current on everything else, so... How big a reduction in child support payments are you seeking? Down to the salary of $65,000. What is that on a monthly basis? From what to what? I haven't figured that out yet. Pretty significant? I think it was about a 42% reduction. Well, that goes back to my question. To what extent should something like that counsel against making this sort of a move? And to what extent should the trial court think this is unwise and borders on a decision that I'm not willing to respect for purposes of whether or not I should reduce child support payments? Well, I think the trial court is under an obligation probably to look at more facts than they did. I think the trial court in this situation looked at the naked numbers of reduction of his salary, and that was it. We had requested the ex-wife to come up, and she didn't make it to the hearing. And so we could have had an inquiry by the court of whether or not she even needed it. She may have won the lottery last week. We don't know. But the trial court just independently made this determination. And I think, in my opinion, the trial court abuses discretion because they should have looked at more. Well, there was no reason other than your client thought this would be better for him for him to have to make this change. Well, I don't think that's – I disagree. What evidence is there in the record that he was going to lose the position he had? Well, because he's buying a law practice, and it's a future for his kids, whatever. And a lot of times children grow up and they go to law school like Daddy did. Justice DeIron pointed out, however, that those benefits will be derived 10 years down the road when they're no longer receiving child support payments. Isn't that correct? They're still receiving child support payments. Ten years from now? After 10 years, they won't. They will run out by then. Well, again, there's no reason to think that when your client made the decision he did that if he had stayed where he was, there would be any need to reduce his child support payments, is there? If he stayed in the engineering field? If he'd stayed where he was before he decided to move to February and make the arrangement he did with you? Would the child support be reduced? Is there any reason to think his income wouldn't be reduced? We don't know. Only speculation because there were some wrinkles there, or ripples there with the engineering firm that maybe he didn't like. That he didn't like? My question is, is there any reason to think that he was not going to have that job in the near future? Well, he's smart enough to look at those ripples, and he testified to those ripples to the trial court as well. And so, maybe he is proactive, and if he was trying to get to his law practice or dream of being a lawyer rather than being an engineer, then that would be, you know, lit. Anything further? We think the trial court abuses discretion by saying he should have consulted his mother first, which I don't think is anywhere in the case law or the statute. You argued that in your brief, and I found that interesting. Because I read the transcript, and then you drafted the order, didn't you? Yes. So it was you who tied that comment into the argument that it was part of the good faith finding of the trial judge. Right? Well, I put it in that brief. Wasn't it actually just part of the voluntary misdetermination? It says there's no question here that this was a voluntary act on the part of Mr. Coleman, that he understood exactly what he was doing. He decided to do it apparently without any input from the mother, simply a unilateral decision on his part to change employment. You argue, and you actually put the sentence itself separate in the order. Court finds that respondent petitioner changed jobs voluntarily, period. Prior to changing jobs, respondent petitioner did not consult with the mother of the children, period. And then you argue in your brief, now see, what he was doing was he was making an additional element to the good faith finding for which there's no case authority. In reality, when you read it in context, the judge made that reference as part of the voluntariness, had nothing to do with the good faith determination. And is there any case authority that you can point to that says that it's error for the court to find that as an element of a voluntariness finding? I didn't interpret the judge to be, in his ruling, I interpreted it to be he was relying on not talking to the mother as one of the elements. Well, I realize that's how it looks when you read the order. But when you read the transcript, he's talking about voluntariness. Then he goes into the analysis of the law practice and his prior experience and going to college. Then he makes the determination that, in his opinion, it's not a good faith change. In the transcript, this is part of the voluntariness conversation. It's not part of the good faith conversation. That comes later. Would you agree? Respectfully, I probably don't agree because I was there at the hearing, and I didn't take it that way coming from the trial court. Okay, counsel, your time is up. You have an opportunity to address this again in rebuttal. Thank you. Ms. Woolen. May it please the Court, Your Honors. Counsel. Sarah Woolen for the appellee. Jennifer Snell, formerly known as Jennifer Cullen. At issue here is whether the trial court properly determined that the respondent did not meet his burden of proof in showing that he acted in good faith in changing employment and thereby reducing his income drastically. Modification of support when the change in employment is voluntary is only appropriate when the respondent acted in good faith in that voluntary change. The question of good faith is a question of fact, and as a question of fact, the determination is whether it is against the manifest weight of the evidence and that no reasonable person could conclude and agree with the court that the defendant did not meet his burden. In this case, not only could a reasonable person conclude that the defendant did not meet his burden, based on the evidence presented, no reasonable person would conclude that the defendant did indeed meet his burden. It would have actually been against the manifest weight of the evidence and abuse of the court's discretion for the court to have found that the respondent did indeed meet his burden of proof. This is based on the fact that the salary is locked in for 10 years. Any benefit that the respondent will receive from this agreement is deferred until after he no longer is required to pay support for these children, including any potential for college education expenses. He basically has the potential of a future windfall. There's no benefit to the children, and there is no evidence that was presented that he acted in good faith. Until this opportunity was presented, he was not even considering Livingston County. He was looking at Chicago, St. Louis, even Texas. The opportunity in Texas had gotten so far that he was looking into how to become licensed in Texas, requesting a letter of recommendation from opposing counsel. Does the record show what the proposed income would have been had he moved to Texas? It does not, Your Honor. What about any Chicago area law firms?  Okay, go ahead. The burden, however, is on the respondent to provide this information to show that he acted in good faith. Counsel, I guess the question becomes if you're a parent under a child support obligation, are you required to maintain a job that pays at least what you're making? Are you prohibited from making a career change, pursuing what you want to do, even if that involves a reduction in pay? Your Honor, you're not prohibited from making a career change, but you are required to show that that career change was done in good faith. Here, that was not shown. So it can never be in good faith if it's a lower-paying job? Your Honor, I'm not saying that. As a matter of fact, there's a case law here that does show evidence where lower-paying jobs were taken, and it was found in good faith, but the circumstances were substantially different, and the evidence before the court did indicate there was a finding of good faith. For instance, in one of the cases, Kowski, which was actually referred in the brief of the appellant, the obligor was having serious issues with work. They had totally changed the structure of his employment. He was having health concerns due to that. He had more responsibility, less pay. He had a prior lack of job security and no ability to find comparable employment. The respondent in this case has not showed any of those factors. In fact, he stated that he would be getting a raise. Merely the fact that there was a change in management in his company does not indicate that there's any risk to his employment. He has shown no evidence that he could not have obtained a job of similar salary, and the burden is on him to prove that. What about the claim that he wanted to move back to his home county? Your Honor, that claim is also not supported with the evidence. The evidence shows that until this opportunity presented himself, he was looking in Chicago. He was looking in St. Louis. There was no evidence presented that he had ever looked in Livingston County at all prior to this offer presenting itself. So therefore, the argument that he was looking to relocate to Livingston County seems to be an argument after the fact, to support the decision to try and prove it was in good faith, even though that was not the initial consideration. That's not what he was looking to do. The court actually considered that and remarked on it in the hearing when it determined that the actions were not taken in good faith. He already had a petition on file to modify child support, didn't he? Yes. That petition was based on the fact that he was paying student loans. Student loans predated the prior agreement between the parties as to whether child support would be set at. And so there would have been no reduction in child support as a result of that petition. He surely had come to realize that prior to... Had you filed a response to that petition? Yes, Your Honor. We had filed a motion to dismiss that petition. In your motion, you had pointed out the legal issue that there was with regard to the modification. Yes, Your Honor. Then comes the purchase agreement with opposing counsel. Yes, Your Honor. And then a couple weeks after that is an amended petition to reduce child support. I believe so, Your Honor. Additionally, Your Honors, in midyear, the trial court determined that it was irresponsible of the obligor and not in good faith for the obligor to take a petition with a voluntary reduction. in income and provided no evidence to support that it was in good faith other than his own testimony. This case is like that. The only testimony that would indicate that this was done in good faith was the testimony of the respondent. It was the respondent's burden, right? Yes, Your Honor. Did he submit the accountant to testify? He did not, Your Honor. Did he submit a copy of the purchase agreement? He did not, Your Honor. It was solely based on his testimony, Your Honor. He was the one in position to provide this additional evidence that would possibly have shown that he acted in good faith, but he did not produce that evidence. Would that evidence have been enough? We don't know because that evidence was not presented. But with the evidence in front of the court, no reasonable person would have found that he acted in good faith, Your Honor. How much child support was he paying? I don't have that exactly. I believe it was a little over $1,000 a month, Your Honor. What was it going to go down to? It was going to reduce drastically. I would concur with opposing counsel that it would probably have been by about 42%. You had reference, Mr. Drucker, made to your client not testifying. What was that all about? So, Your Honor, first and foremost, that is not relevant. The burden was not on my client to provide evidence that he did not act in good faith. The burden was on him to provide that he did act in good faith. Furthermore, Mr. Drucker, opposing counsel, gave up that argument when they decided to proceed in spite of the fact that my client was not there. Over top of my petition to continue to give my client the opportunity to be there, Your Honors. Did you ask for an opportunity of continuance? Yes, Your Honors, we asked for a continuance. Mr. Drucker objected, and we proceeded based on opposing counsel's objection to my condictment. So, the fact that my client was not there, Mr. Drucker could have agreed to the continuance and made sure that my client was there to elicit the information that he's claiming is necessary for the court to decide. What did you represent to the court as to why your client wasn't present? Yeah, I do not recall if I represented to the court why my client wasn't present. My client lives substantially far away in southern Illinois. My client actually believed we may be able to reach an agreement, and I actually spoke to Mr. Drucker prior to the hearing and said, can we get a continuance and see if we can reach an agreement beforehand. Had you also requested some information that you had not received yet? Yes, so I had filed discovery. I had received discovery responses late the week before, so just a few days before hearing. Had gone through them, realized that all the information that I would need was not available, and so my continuance was actually based on the fact that I wanted more time to be able to obtain the information that was not presented in discovery and also not presented in court, Your Honors. So, counsel complained to the court that your client wasn't present? Counsel commented that my client wasn't present and that he had filed a Rule 237 request to appear and produce. The documents he requested were produced, but counsel chose to proceed nonetheless. Again, any evidence that was not before the court, it was the opposing counsel, it was the respondent's duty to burden to prove, and therefore it was their duty to ensure that the evidence was indeed before the court. Justice DeArmond asked about this accountant's evaluation that Mr. Brucken referred to and how it was not produced, how his written evaluation was not presented in court. Was there any discussion about that at the trial level? Yes, Your Honor. It was asked how the evaluation occurred, whether there was written evidence of it, whether it was produced, and also the response from opposing counsel was that we did not request it. We had requested documents. That you did not request it? Correct. So, that's why he didn't produce it? That is the reason for not producing it, that we did not request it in our discovery. Perfect. However, as Your Honors are aware, the fact that we did not request it did not relieve him of his burden of providing whatever evidence he had that he acted in good faith. Had that evaluation been presented, may it have shown he acted in good faith, possibly. We did not have an opportunity to review it. We did not have an opportunity to question it. We did not have an opportunity to question the accountant who came to the evaluation. Moreover, respondent did not act in good faith in that he did not actually do his own due diligence. He relied solely on the evaluation of the CPA for the firm. And he did not take into account how this would impact his children. Well, at best, he did not take into account how it would impact his children and do the due diligence. At worst, Your Honors, he actually did take into account how it would impact his children and carefully thought out a method whereby his child support obligation would be reduced and frozen for 10 years until he was no longer required to pay the child support obligation. Your Honors. Well, that was the question I asked Mr. Bruckle. And to state it again, to what extent in deciding to pursue a different career path that on its face might seem to be legitimate for various reasons that were described, to what extent is a person in Mr. Coleman's position required to consider the effect of the new job would have on child support obligations, including here apparently a fairly significant reduction? I asked Mr. Bruckle that. Let me ask you. What was he paying at the time of this hearing and what did he ask to have it reduced to? And to what extent is that something which is an appropriate consideration for the trial court in a voluntary analysis? Your Honors, I don't recall exactly what he was paying. I believe it was slightly upwards of $1,000 a month. The reduction, as Mr. Coleman or Mr. Bruckle had stated, would have been a substantial reduction, potentially a 42 percent reduction in the child support because it would have been based on the new statute taking into account both parents' income as well as the drastic reduction in his income. So Mr. Bruckle's 42 percent figure sounds right to you?  So can a trial court deem it inappropriate and therefore not in good faith for a voluntary change of employment when there's going to be a drastic effect on child support payments if you're not otherwise compelled to do it? In other words, he just thinks that this would be a better job, more comfortable, and you heard the various reasons that have been subscribed, but there's a reduction in child support payment from that. So, Your Honor, case law in Midyear, the trial court actually in determining that the burden of good faith was not milled, in which the appellate court upheld, stated that it was in their determination of good faith, stated that it was irresponsible for the obligor not to consider his child support obligation and its impact on the children. Additionally, which court said that and when? So the trial court stated that it was irresponsible. I thought you were citing some other appellate court decision. What was the name of that case? Midyear, Your Honor, it was in our brief. In Ray, the marriage of Midyear, 241 Illinois App 3D 217. What court was it? The appellate court was actually the fourth district in 1996, Your Honors. But the trial court in determining whether good faith, whether the obligor acted in good faith, did consider the fact that it was irresponsible of him to not consider the financial obligations he had to his children and the impact that that would have on his child support and his ability to support those children. Moreover... Well, here's the interesting question about that. I can understand that argument. I can understand that assessment. It seems to me that's a matter of policy, and I'd be a lot more comfortable with the policy made from the body of the state of Illinois, namely folks across the street, had said that when they're talking about reductions in child support amounts. But, by the way, if you're trying to reduce the amount that you otherwise paid and you change jobs, and it's going to have a substantial effect on your child support payments, then it's irresponsible to do this, and therefore it affects your voluntariness. But the legislature has never actually said that, has it? I don't believe so, Your Honor. Again, I was relying on the case law. Well, not inappropriately. I'm just musing about this. But it seems to me that's really the key issue in this case, isn't it? Well, Your Honor, the key issue is whether he acted in good faith and whether he met his burden of proving that he acted in good faith. He did not meet that burden. The fact that any benefits are delayed until he's no longer required to pay child support, the fact that he has locked himself into a salary of $65,000 with no opportunity for bonuses, no opportunity for commissions, no opportunity for overtime, no opportunity for any increase in that income, absent a large matter where the firm itself grosses $42,000 in attorney's fees. Counsel, your time is up. Thank you, Your Honors. Mr. Brucker, any rebuttal, sir? Yes. Okay. The Mitter case has no bearing whatsoever. The facts of that case was the guy had been held in civil contempt about five times. He entertained a corporation with his girlfriend in reduction of his – there was so much facts that were – The thing of the factual context really is less important than the point of law, which is is it irresponsible for your client to consider this change and the effect it's going to have on dramatic change in child support payments when he wants to change jobs just because? I don't think so, Your Honor, Justice, because when we cited the Coons case – and I think the Fourth District has cited that many, many times – and when they said that it's undertaken in good faith and not deliberately designed to avoid responsibility for those dependent on him, he should be permitted to attempt to enhance his economic fortunes without penalty. Well, yes, that's true, but the problem with this case is it was a knowing reduction for ten years of his economic fortunes. And, you know, in the big scheme of things, his growth of a young man. Ten years from now, things will be bright and happy for him. But he's still making child support payments? Well, he won't be making them. It's a 40 percent, 42 percent reduction. And are the kids going to be a detriment for that reduction, or is the ex-wife going to be? Well, you know, child support is supposed to be for the benefit of the children. That's correct. So I can only assume that this is a detriment to the kids, isn't it? Well, but there is no inquiry by the trial court in that situation. He just made that assertion that, you know, I go back to that naked number, reducing it down, and that was it. He didn't say, okay, let's call in the ex-wife and see where she's at. She's supposed to be here today. That type of thing. Well, wait a minute. You heard the explanation about that. Wasn't it you who objected to the continuance or we don't have the testimony? Because it had been going on for a long, long, long time. How long continuance was requested? Well, we filed the previous motion a year ago. I thought you answered my question. I'm sorry. How long continuance was requested? She didn't. I don't think she did. The opposing counsel said that. Well, you just objected to any continuance. Because we were ready to go. So it might have been just three weeks for all you know. Okay. Well, the bottom line is also this is an abuse of discretion. Given all of this, can this court really conclude that no reasonable person in Judge Travers' position could have concluded that your client's actions here were not in good faith? Yes, because there was no finding or substantiation by the trial court of good faith initially on the factual basis of good faith or bad faith on my client. And we presented evidence that he was up to date on everything and everything, you know. So I think it was an abuse of discretion for him to summarily, arbitrarily make that decision. Okay. Thank you, counsel. Thank you. We'll take this matter into advisement.